UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| J.I., through his next of friend, PERLA INTERIANO,<br>    Plaintiff,<br><br>  v.<br><br>JEFFERSON PARISH SCHOOL BOARD and JOHN DOE, in his individual capacity,<br><br>    Defendants. | CASE NO. 23-1532<br><br>SECTION: "T" (1) |

## ORDER AND REASONS

  The Court has before it two Motions to Dismiss from Defendant Jefferson Parish School Board ("JPSB"), R. Doc. 20, and Defendant Alexander Brown, formerly named in this suit as "John Doe," R. Doc. 24. Plaintiff Perla Interiano, as the next friend of her minor grandson, referred to herein as J.I., has filed an opposition to each of those Motions, R. Docs. 22; 26, and Brown has filed a reply memorandum, R. Doc. 30. Having considered the parties' briefing, as well as the applicable law and facts, the Court will DENY both Motions.

  **I.  BACKGROUND**

  This case arises from the alleged sexual abuse of a severely intellectually disabled child of less than ten years old by Brown in his capacity as a school bus monitor for JPSB. R. Doc. 15 at 2–4. Plaintiff alleges Brown sexually assaulted J.I. "countless" times between 2018 and 2020. *Id.* at 4. Plaintiff filed suit against Brown under 42 U.S.C. § 1983, alleging Brown, acting under color

1

of law, deprived J.I. of his substantive due process rights by sexually assaulting him. *Id.* at 11–12. Plaintiff also asserts JPSB is vicariously liable for Brown's actions under the theory of *respondeat superior* and thus brings suit against JPSB under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, alleging Brown subjected J.I. to disparate treatment discrimination by targeting J.I. as the victim of his sexual abuse, rather than other children on the school bus he was supposed to monitor, because J.I. is disabled. *Id.* at 6–9. Finally, Plaintiff brings two state law claims against both Brown and JPSB, alleging Brown's sexual abuse of J.I. violated the Louisiana Commission on Human Rights Act ("LCHRA"), La. R.S. § 51:2231, *et seq.*, by "denying [J.I.] the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered to non-disabled participa[nts]" because of his disability, as well as asserting a general claim for direct and supervisory negligence under Louisiana Civil Code article 2315. *Id.* at 9–11. JPSB and Brown now move the Court to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiff has failed to state a claim upon which relief can be granted under any of the cited federal statutes, and the Court should decline to assert pendant jurisdiction over Plaintiff's remaining state law claims after her federal claims have been dismissed.

II. **APPLICABLE LAW**

Rule 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must construe the allegations in the complaint in the light most

favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *Lovick v. Ritemoney Ltd.,* 378 F.3d 433, 437 (5th Cir. 2004) (citing *Herrmann Holdings Ltd. v. Lucent Techs., Inc.,* 302 F.3d 552, 558 (5th Cir. 2002)). A complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). If the factual allegations are insufficient to raise a right to relief above the speculative level, the claim should be dismissed. *Twombly*, 550 U.S. at 555.

### III. DISCUSSION AND ANALYSIS

JPSB and Brown argue this Court must dismiss Plaintiff's federal law claims under Rule 12(b)(6) and should decline to assert pendant jurisdiction over Plaintiff's remaining state law claims. The Court will consider each of the Defendants' arguments in turn.

#### A. JPSB

Plaintiff brings claims against JPSB under Title II of the ADA and Section 504 of the Rehabilitation Act.[1] Title II provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 provides "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any

---

[1] JPSB's Motion also purports to seek dismissal of Plaintiff's claims against it under Section 1983. R. Doc. 20 at 19–20. However, as Plaintiff points out, Plaintiff has raised a Section 1983 claim against Brown only, not JPSB. R. Doc. 22 at 11–12. Thus, the Court will not discuss this argument.

3

program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The Fifth Circuit has explained "Congress' intent was that Title II extend the protections of the Rehabilitation Act 'to cover all programs of state or local governments, regardless of the receipt of federal financial assistance' and that it 'work in the same manner as Section 504.'" *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (quoting H.R.Rep. No. 101–485, pt. III at 49–50 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 472–73). The "remedies, procedures, and rights" provided by Title II are the same as those provided by Section 504. 42 U.S.C. § 12133. Thus, "[j]urisprudence interpreting either section is applicable to both." *Hainze*, 207 F.3d 799 (citing *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998)). Accordingly, the Court will consider Plaintiff's claims under these statutes jointly.

In the Fifth Circuit, a "public entity [like, here, JPSB,] is liable for the vicarious acts of any of its employees" under Title II and Section 504. *Delano-Pyle v. Victoria Cnty.*, Tex., 302 F.3d 567, 574–75 (5th Cir. 2002). To state a claim for disability discrimination under these statutes, a plaintiff must plausibly allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Wells v. Thaler*, 460 F. App'x 303, 311 (5th Cir. 2012) (quoting *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011)). The Supreme Court has recognized one way a plaintiff may show the alleged discrimination was by reason of his disability is via evidence of disparate treatment. *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52–53 (2003). A plaintiff raises a disparate treatment claim by alleging he was treated less favorably than others because of a protected characteristic. *See, e.g.*, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (explaining, in the context of employment discrimination, that "[d]isparate treatment is the most easily understood type of discrimination. The employer simply treats some people less favorably

4

than others because of" a protected characteristic). For such a claim to survive Rule 12(b)(6) review, a plaintiff must plausibly allege the disparate treatment was "motivated by" or "by reason of" the plaintiff's disability. *S.B. on behalf of S.B. v. Jefferson Par. Sch. Bd.*, 2023 WL 3723625, at *4 (5th Cir. May 30, 2023).

Here, Plaintiff does not claim J.I. was denied any benefits for which JPSB was responsible, but alleges the child was "otherwise discriminated against" by JPSB via its vicarious liability for Brown's disparate treatment of J.I. in sexually abusing him because of his disability. R. Doc. 15 at 7; *see also* R. Doc. 22 at 6 (explaining "J.I.'s disability and attendant speech/cognitive impairments are part and parcel with the ease by which Defendant Brown is alleged to have been able to 'get away with' abusing J.I. for such an extended period of time"). In its Motion to dismiss Plaintiff's claims against it, JPSB points to four cases from district courts within the Fifth Circuit to argue the sexual abuse Plaintiff alleges does not qualify as actionable discrimination under Title II or Section 504. R. Doc. 20 at 7–15 (citing *Woods v. G.B. Cooley Hosp. Serv. Dist.*, 2007 WL 4812054, at *2 (W.D. La. Dec. 10, 2007), *report and recommendation adopted*, 2008 WL 11509443 (W.D. La. Jan. 28, 2008); *Ball v. St. Mary's Residential Training Sch.*, 2015 WL 3448470, at *3 (W.D. La. May 28, 2015); *Woodberry v. Dallas Area Rapid Transit*, 2017 WL 840976, at *7 (N.D. Tex. Mar. 3, 2017); *Strange v. Mansfield Indep. Sch. Dist.*, 2018 WL 3950219, at *3 (N.D. Tex. Aug. 17, 2018)). In opposition, Plaintiff argues those cases are nonbinding and unpersuasive. R. Doc. 22 at 6–10.

In the first and earliest case relied upon by JPSB, *Woods*, the plaintiff sued a hospital under Title II, alleging her developmentally disabled child had been physically and sexually abused by hospital employees. 2007 WL 4812054, at *1. As in this case, the plaintiff alleged this abuse itself

5

"otherwise" subjected the child to discrimination. *Id.* The court dismissed the plaintiff's claims, reasoning under the canon of statutory interpretation *noscitur a sociis* that Title II's "or be subjected to discrimination" clause must be read in the context of the preceding language stating "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity[.]" *Id.* at 2. The court concluded that, "[g]iven this context, 'subjected to discrimination' should be construed as prohibiting discriminatory acts that prevent persons with disabilities from taking part in "services, programs, or activities of a public entity." *Id.* Thus, the *Woods* court held accepting the plaintiff's argument that physical or sexual abuse by a public entity can be "discrimination" under Title II would unduly broaden the scope of the ADA. *Id.*

Plaintiff argues *Woods* is distinguishable from this case because she does not assert Brown's sexual abuse of J.I. itself constitutes discrimination. R. Doc. 22 at 9. Rather, Plaintiff alleges J.I. was subjected to "disparate treatment" discrimination based on Brown's targeting of him for abuse because of his disability, as opposed to other, non-disabled children. *Id.* at 4–6. However, disparities in treatment alone are not always discriminatory: Were it so, even necessary accommodations could be considered discrimination. As explained *supra*, disparate treatment is one "theory" by which a plaintiff may prove a discriminatory action taken against him was discrimination *because of* a protected characteristic; here, J.I.'s disability. *See Raytheon*, 540 U.S. at 52–53 (2003) (contrasting the disparate treatment and disparate impact theories of discrimination). Said another way, a plaintiff may show that a covered entity's "treatment" of him was *disability* discrimination by reference to other similarly situated, non-disabled individuals who were not exposed to the same treatment. But the underlying treatment *itself* must constitute "discrimination" as defined by the ADA to be actionable under Title II. Thus, if the *Woods* court

6

was correct in holding that physical or sexual abuse cannot constitute discrimination under Title II, the fact that Plaintiff pleads a disparate impact theory in this case cannot save her claim.

However, the Court finds the reasoning underlying the *Woods* holding to be unpersuasive. The *Woods* court held the phrase "or be subjected to discrimination" in Title II must, in context, be "construed as prohibiting discriminatory acts that prevent persons with disabilities from taking part in 'services, programs, or activities of a public entity.'" 2007 WL 4812054, at *2 (quoting 42 U.S.C. § 12132). That court reasoned this interpretation is necessary to avoid "unduly broadening the scope of the ADA." *Id.*; *see also In re Hickman,* 260 F.3d 400, 403 (5th Cir. 2001) (explaining the canon *noscitur a sociis* is "often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress") (quoting *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307 (1961)). It is, of course, true that, in statutory interpretation, "a word is known by the company it keeps." *See Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 575 (1995). But the Supreme Court has also explained that it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167 (2001)) (internal quotation marks removed). It is a court's "duty 'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche,* 348 U.S. 528, 538–39 (1955) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 15 (1883)). Thus, courts must be "reluctant to treat statutory terms as surplusage in any setting[.]" *TRW Inc.*, 534 U.S. at 31 (quoting *Duncan,* 533 U.S. at 174).

But the *Woods* court's interpretation of Title II does just that. Title II states plainly, "no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity, *or be subjected to discrimination by any such entity*." 42 U.S.C. § 12132 (emphasis added). To read that provision's secondary clause as prohibiting only "discriminatory acts that prevent persons with disabilities from taking part in 'services, programs, or activities of a public entity[,]'" *see Woods*, 2007 WL 4812054, at *2, renders it entirely superfluous, because such discrimination is already prohibited by the *first* clause. The Court cannot ignore the clear language with which Congress drafted Title II and hold the second clause to prohibit no additional conduct. Thus, in its attempt to avoid "unduly broadening the scope of the ADA[,]" *Woods* appears to have unduly *narrowed* the protections Congress intended Title II to provide.

The other three cases JPSB cites in support of its argument that the instant sexual abuse of J.I. cannot be discrimination under Title II or Section 504 fair no better, as they rely on little other than *Woods*'s dubious interpretation of Section 12132, and each other. *See Ball*, 2015 WL 3448470, at *3 (citing to and agreeing with *Woods*); *Woodberry*, 2017 WL 840976, at *7 (citing to and agreeing with *Woods* and *Ball*); *Strange*, 2018 WL 3950219, at *3 (citing to and agreeing with *Woods* and *Woodberry*). Thus, the Court must consider whether Brown's sexual abuse may be actionable discrimination under Title II and Section 504 independent of those nonbinding and unpersuasive precedents.

While the Fifth Circuit has not spoken directly on this issue, it does not appear the circuit court would agree that construing physical or sexual abuse to be potentially actionable disability discrimination would unduly broaden the scope of protections provided by Title II and Section 504 beyond that intended by Congress. In several cases post-dating *Woods*, *Ball*, *Woodberry*, and *Strange*, the Fifth Circuit has considered disability discrimination claims for physical and even

verbal abuse under those statutes. For example, in *T.O. v. Fort Bend Indep. Sch. Dist.*, the Fifth Circuit addressed whether a district court had correctly dismissed the plaintiffs' claims, brought under Title II and Section 504, based on a teacher having beaten and choked their disabled child. 2 F.4th 407, 412 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2811 (2022), *reh'g denied*, 143 S. Ct. 60 (2022). The Fifth Circuit affirmed the dismissal of those claims, finding the factual allegations in the plaintiffs' complaint did not permit the inference that the child was discriminated against *because of* his disability. 2 F.4th at 417. But the Fifth Circuit did not address whether such physical abuse could be considered discrimination under Title II and Section 504, seeming to take for granted that it could. Similarly, in *S.B.*, the Fifth Circuit affirmed the district court's dismissal of a plaintiff's Title II and Section 504 claims that her disabled daughter had been slapped by her teachers because the plaintiff had not adequately alleged the abuse occurred *because of* the child's disability. 2023 WL 3723625, at *3–4. Again, the Fifth Circuit in *S.B.* seems to have operated on the assumption that such physical abuse could be actionable abuse under those statutes, but held the plaintiff simply had not plausibly pleaded her claims.

The same can be said about *Wilson v. City of Southlake*, 2022 WL 17604575, at *10 (5th Cir. Dec. 13, 2022). Even though the plaintiffs in *Wilson* claimed their disabled child had been discriminated against based on a school resource officer having only handcuffed and *verbally* abused the child, the Fifth Circuit did not question whether this conduct could constitute discrimination under Title II and Section 504. Instead, the court affirmed the district court's entry of summary judgment for defendant because plaintiffs had not produced any evidence supporting their argument that the officer had verbally abused the disabled child *because of* his disability. Finally, and most recently, in *J.W. v. Paley*, the Fifth Circuit affirmed a district court's entry of summary judgment to the defendant in a case challenging a school resource officer's repeated

9

tasing of a disabled child, apparently presuming such conduct could be discrimination under Title II and Section 504, but again holding the plaintiffs had not shown the child had been tased *because of* his disability. 81 F.4th 440, 449–51 (5th Cir. 2023).

It is, of course, possible that the Fifth Circuit did not question whether the alleged abuse in those cases was actionable disability discrimination because the issue was not raised before it. Nonetheless, these cases serve as compelling evidence that the Fifth Circuit would hold even *verbal* abuse may be actionable under Title II and Section 504 if such abuse has occurred because of a person's disability. *See Wilson*, 2022 WL 17604575, at *10. This reading accords with the plain language of those statutes, as drafted by Congress, that no disabled person shall be "subjected to discrimination" by a public entity, without any textual limitation to discrimination implicating denial of that entity's services.

Additionally, the Fifth Circuit has held a school district can be liable for discrimination under Title II and Section 504 in the case of peer-to-peer harassment and abuse based on disability where it has been deliberately indifferent to that abuse. *See Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir. 2014); *Nevills v. Mart Indep. Sch. Dist.*, 608 F. App'x 217, 221 (5th Cir. 2015) (unpublished). It would be a strange result indeed if Title II and Section 504 impose liability on public entities for deliberate indifference to abuse of a disabled person by his peers, but not, as here, for the public entity's *own* abuse via vicarious liability.

Accordingly, based on persuasive evidence in the Fifth Circuit precedents discussed *supra*, as well as the plain statutory language, the Court holds that Brown's alleged sexual abuse of J.I. may be actionable discrimination under Title II and Section 504.

As to the remaining prongs necessary to plead a claim under those statutes, JPSB does not contest J.I. has a qualifying disability, and Plaintiff has plainly alleged Brown targeted J.I. *because of* this qualifying disability. *See* R. Doc. 15 at 6 ("Defendant Brown targeted J.I. on account of his disability and attendant vulnerability . . . [and] on account of [his] disability-related limitations, including limitations in speaking, expressing himself, and communicating"). Thus, having found the sexual abuse Plaintiff alleges may be actionable disability discrimination under Title II and Section 504, Plaintiff has stated a claim sufficient to survive 12(b)(6) review.[2] *See Wells*, 460 F. App'x at 311.

JPSB challenges Plaintiff's state law claims against it only to the extent that it argues this Court should decline to assert pendant jurisdiction over those claims if it dismisses all of Plaintiff's federal law claims. Having declined to dismiss Plaintiff's federal claims under Title II and Section 504, there is no question that this Court may continue to assert jurisdiction over Plaintiff's related state law claims. Accordingly, JPSB's Motion to Dismiss must be denied in its entirety.

**B. Brown**

Brown argues Plaintiff has failed to state a claim upon relief which can be granted under the LCHRA and seeks dismissal of that claim pursuant to Rule 12(b)(6). Brown does not argue this Court should dismiss Plaintiff's claim against him under Section 1983, but asks the Court to

---

[2] JPSB also suggests, in the alternative, that this Court should dismiss Plaintiff's claims pursuant to Rule 12(b)(1) for lack of jurisdiction, arguing at least some of her claims are subject to the exhaustion requirements in the Individuals with Disabilities Education Act ("IDEA"). R. Doc. 20 at 17–18. However, as Plaintiff points out, this argument is foreclosed by the Supreme Court's recent opinion in *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 150 (2023) (holding claims seeking monetary damages, which are not available under the IDEA, need not be exhausted under the IDEA before being raised under the ADA).

11

order Plaintiff to provide a more definite statement of that claim pursuant to Rule 12(e).[3] The Court will consider each argument separately.[4]

### 1. LCHRA

In his Motion, Brown simply relies on JPSB's argument that sexual abuse cannot constitute discrimination under Title II and Section 504, asserting without citation that Plaintiff's allegations of sexual abuse do not allege discrimination under the LCHRA. As explained *supra*, the Court finds Plaintiff's allegations to be sufficient to allege discrimination under Title II and Section 504. Brown points to nothing indicating this is not also the case under the LCHRA, which was enacted "to provide for execution within Louisiana of the policies embodied in" several federal anti-discrimination statutes. La. R.S. § 51:2231. Thus, the Court finds this argument insufficient to show Plaintiff has failed to state a claim upon which relief can be granted under the LCHRA.[5]

### 2. Section 1983

Brown argues Plaintiff's allegations against him are inadequate to plead a claim under Section 1983 and asks the Court to order Plaintiff to provide a more definite statement of this claim

---

[3] Brown's Motion does not address Plaintiff's state law negligence claim under La. C.C. art. 2315.

[4] In his initial Motion, Brown also argued Plaintiff lacked standing to assert any claims on behalf of her disabled grandson, J.I. R. Doc. 24 at 1–3. However, in recognition of the fact that Plaintiff has been appointed as tutrix for J.I. by the 24th Judicial District Court for the Parish of Jefferson, Louisiana, Brown has withdrawn this argument. R. Doc. 30 at 1.

[5] In his reply memorandum, Brown raises the additional argument as to Plaintiff's claims under both the LCHRA and Section 1983 that Plaintiff's "assertions that [J.I.] was discriminated against are insufficient because [s]he fails to point to a separate group which defendant allegedly favored over a group to which [J.I.] belongs." R. Doc. 30 at 4–5. However, it is well established in the Fifth Circuit that "arguments raised for the first time in a Reply brief are waived." *Iteld, Bernstein & Assocs., LLC v. Hanover Ins. Grp.*, 2009 WL 2496552, at *4 (E.D. La. Aug. 12, 2009) (citing *United States v. Jackson*, 426 F.3d 301, 304 n. 2 (5th Cir. 2005); *see also Weems v. Hodnett*, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) ("[I]t is improper for the movant to sandbag and raise wholly new issues in a reply memorandum. The scope of the reply should be limited to addressing the arguments raised by the memorandum in opposition"). Thus, the Court will not consider this new argument except to note that Plaintiff does allege "Brown sexually abused and targeted J.I., *in lieu of non-disabled individuals*, because of his disability." R. Doc. 15 at 7 (emphasis added).

pursuant to Rule 12(e). Rule 12(e) provides, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." However, "a motion for a more definite statement will not be granted where the moving party can reasonably respond to the non-movant's pleading, but wants the non-movant to plead additional information that could otherwise be later gained through discovery." *Brown v. Maxxam Inc.*, 1991 WL 13918, at *2 (E.D. La. Jan. 28, 1991) (citing *Mitchell v. E–Z Way Towers, Inc.,* 269 F.2d 126, 130 (5th Cir.1959)); *see also Acker v. Bishop*, 2006 WL 1895484, at *1 (W.D. La. July 10, 2006) (denying motion for more definite statement where the defendant demanded "the time, place and circumstances of the specific acts alleged against movants"). Here, contrary to his arguments, the information Brown seeks to have Plaintiff provide under Rule 12(e) does not go to the sufficiency of Plaintiff's Section 1983 claim against him, but is rather "additional information that could otherwise be later gained through discovery." *Brown*, 1991 WL 13918, at *2; *see* R. Doc. 24 at 6–7 (asking the Court to order Plaintiff to provide, *inter alia*, J.I.'s birthdate and place of birth; the date Plaintiff became aware of the alleged sexual abuse of J.I.; the date Plaintiff contacted Children's Hospital about the alleged sexual abuse; the names and addresses of J.I.'s parents and whether they are alive, deceased, or divorced; and the names of all witnesses to the alleged sexual abuse). The lack of this information does not render Plaintiff's Amended Complaint "so vague or ambiguous that [Brown] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Accordingly, the Court finds no merit to Brown's request for a more definite statement of Plaintiff's Section 1983 claim.

## IV.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Jefferson Parish School Board's Motion to Dismiss, R. Doc. 20, and Defendant Alexander Brown's Motion to Dismiss, R. Doc. 24, are **DENIED**.

New Orleans, Louisiana, this 11th day of December, 2023.

                                                Greg Gerard Guidry
                                                United States District Judge